UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Robin Herrera | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
    Caleb Liang
    David Kenner

Attorneys Present for Defendants:
    Nicholas Gross
    Kimberly Klinsport
    John Pernick

**Proceedings:**    ZOOM HEARING RE: DEFENDANT FUTURHEALTH, INC.'S MOTION TO COMPEL ARBITRATION (Dkt. 29, filed on November 24, 2025)

MOTION OF DEFENDANTS JOHN LEVAN AND LUKE MAHONEY TO COMPEL JUDICIAL REFERENCE OR IN THE ALTERNATIVE COMPEL ARBITRATION (Dkt. 30, filed on November 30, 2025)

## I.    INTRODUCTION

This case centers on claims by a company that its managers conspired to systematically raid the company while secretly building a competing enterprise using stolen assets, intellectual property, and business opportunities.

On September 17, 2025, plaintiff Goglia Nutrition, LLC ("Goglia Nutrition" or "Plaintiff" or "Company") filed this action against defendants John Levan ("Levan"), Luke Mahoney ("Mahoney"), Jon Hambidge ("Hambidge"), FuturHealth, Inc. ("FuturHealth"), and Does 1 through 100 (collectively, "Defendants"). Plaintiff alleges seventeen causes of action: (1) breach of fiduciary duty, against Levan and Mahoney; (2) aiding and abetting breach of fiduciary duty, against Hambridge and FuturHealth; (3) breach of contract, against Levan and Mahoney; (4) fraud in the execution, against all defendants; (5) fraud in the inducement, against all defendants; (6) conversion, against all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

defendants; (7) violation of Cal. Penal Code § 496(c), against all defendants; (8) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), against all defendants; (9) trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), against all defendants; (10) false designation of origin/ unfair origin under 15 U.S.C. § 1125(a), against FuturHealth; (11) California common law trademark infringement, against FuturHealth; (12) copyright infringement under 17 U.S.C. § 106 and § 501, against FuturHealth; (13) breach of contract, against FuturHealth; (14) unjust enrichment, against all defendants; (15) unfair competition under Cal. Bus. & Prof. Code § 17200, against all defendants; (16) civil conspiracy, against all defendants; and (17) declaratory relief, against all defendants. Dkt. 1 ("Compl.").

On November 10, 2025, plaintiff filed a motion for a preliminary injunction. Dkt. 11-1 ("PI mot."). On December 8, 2025, the Court held a hearing and deferred decision on plaintiff's motion for a preliminary injunction pending further briefing.

On November 24, 2025, FuturHealth filed a motion to compel arbitration. Dkt. 29 ("FuturHealth Mot."). On November 30, 2025, Levan and Mahoney filed a motion to compel judicial reference or in the alternative compel arbitration. Dkt. 30 ("Levan and Mahoney Mot."). On December 1, 2025, plaintiff filed an omnibus opposition to Levan and Mahoney's and FuturHealth's motions. Dkt. 36 ("Opp."). On December 8, 2025, FuturHealth filed a reply. Dkt. 38 ("FuturHealth Reply"). On December 8, 2025, Levan and Mahoney filed a reply. Dkt. 37 ("Levan and Mahoney Reply").

On December 22, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.     BACKGROUND

The background of this case is known to the parties. Before the Court are FuturHealth's motion to compel arbitration and Levan and Mahoney's motion to compel judicial reference.

Plaintiff Goglia Nutrition, LLC was formed in December 2015 with four equal cofounders—Philip Goglia ("Goglia"), Lisa Saridakis ("Saridakis"), John Levan, and Luke Mahoney—each owning 25% of the company. Dkt 11-3, Declaration of Philip Goglia ("Goglia Decl.") ¶ 5. When forming Goglia Nutrition, all four cofounders entered into a Limited Liability Operating Agreement ("Operating Agreement") which contained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

a judicial reference provision. Dkt. 30-4, Declaration of John Levan ("Levan Decl.") ¶ 5, Ex. A § 20.17. Levan and Mahoney now seek to compel judicial reference of plaintiff's claims against them pursuant to this judicial reference provision.

Beginning in or around 2023, while still serving as Goglia Nutrition's managers, Levan and Mahoney established a new venture—FuturHealth—together with Jon Hambidge. Dkt. 11-2, Declaration of Caleb Liang ("Liang Decl.") ¶ 13, Ex. 12. Plaintiff alleges that after secretly forming and positioning FuturHealth, Mahoney and Levan orchestrated a fraudulent scheme to transfer Goglia Nutrition's most valuable assets to FuturHealth for a fraction of their fair value while concealing the terms of the transfer and their involvement in FuturHealth. Compl. ¶ 37-38.

On December 18, 2023, Levan and Mahoney presented Goglia and Saridakis with a "Written Consent" package ("Consent Package") that referenced and incorporated three agreements between Goglia Nutrition and FuturHealth—a Technology License Agreement, a Inbound Data License Agreement, and a Services Agreement (collectively, "the Agreements"). Dkt 11-3, Declaration of Philip Goglia ("Goglia Decl.") ¶¶ 10-11, Exs. 3-6. Goglia and Saridakis signed the Consent Package; however, when they signed, they did not read the Agreements because the Agreements were not attached to the Consent Package. Id. Plaintiff alleges that Levan and Mahoney deliberately withheld the Agreements from Goglia and Saridakis to obtain their signatures, and that Goglia and Saridakis signed the Agreements based on Levan and Mahoney's verbal representation that doing so would enable FuturHealth to add complementary telehealth functionality to benefit Goglia Nutrition. Goglia Decl. ¶ 11. Furthermore, plaintiff alleges that Levan and Mahoney intentionally concealed their interests in FuturHealth in the Consent Package documents, despite having been informed by Goglia Nutrition's company counsel that Mahoney and Levan were required to provide full written disclosure of their conflicts of interest and obtain informed consent from Goglia and Saridakis. Liang Decl. ¶¶ 8-9, Exs. 8-9. By contrast, FuturHealth contends that the Agreements were inadvertently omitted due to a clerical error by Goglia Nutrition's company counsel and that Goglia and Saridakis voluntarily chose not to read the Agreements. See dkt. 17-4 ¶ 8, Ex. 2.

One of the Agreements—the Technology License Agreement ("TLA")—contained an arbitration provision stating that: "Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration …." Dkt. 29, Levan Decl. ¶ 2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

Ex. 1 at 10. FuturHealth now seeks to compel arbitration of plaintiff's claims against it pursuant to this arbitration provision.

## III. LEGAL STANDARD

### A. Motion to Compel Arbitration

"An agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). As with any other contract dispute, the Court must first look to the express terms of the contract. Id.

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is a matter to be determined by the court whether the FAA applies to a certain agreement; "[a]s a threshold matter, the FAA applies if, among other things, the contract requires dispute resolution 'by arbitration.'" Judge William W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial, § 16:63.1 (The Rutter Group 2002) (citing Portland Gen. Elec. Co. v. United States Bank Trust Nat'l Ass'n as Tr. for Trust No. 1, 218 F.3d 1085, 1089 (9th Cir. 2000)).

Any party to an arbitration agreement covered by the FAA who is "aggrieved by the alleged ... refusal of another to arbitrate" may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, the court, not the arbitrator, must decide whether a particular dispute is arbitrable. 9 U.S.C. § 4; AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (holding that the arbitrator is without power to determine arbitrability absent "clear[ ] and unmistakabl[e]" language in the arbitration agreement conferring such power). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp., 207 F.3d at 1130. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

accordance with its terms." Id. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999) (noting that where an arbitration agreement has been signed by the parties with respect to the issues in dispute, "[s]uch agreements are to be rigorously enforced").

The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In addition, "[a] trial court has authority to stay proceedings in the interest of saving time and effort for itself and litigants." ATSA of California, Inc. v. Cont'l Ins. Co., 702 F.2d 172, 176 (9th Cir. 1983).

The Court may consider evidence outside the pleadings on a motion to compel arbitration. Manuwal v. BMW of N. Am., LLC, 484 F.Supp.3d 862, 865 n.1 (C.D. Cal. 2020); see also Arredondo v. Sw. & Pac. Specialty Fin., Inc., No. 1:18-CV-01737-DAD-SKO, 2019 WL 4596776, at *4-5 (E.D. Cal. Sept. 23, 2019) (considering evidence presented by the parties in motion to compel arbitration); see also Hansen v. Rock Holdings, Inc., 434 F.Supp.3d 818, 824 (E.D. Cal. 2020) (considering motion to compel arbitration under standard similar to Federal Rule of Civil Procedure 56).

### B.  Motion to Compel Judicial Reference

Section 638 of the California Code of Civil Procedure states that a court may appoint a judicial referee "to hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." Cal. Civ. Proc. Code § 638. The court may utilize this alternative dispute resolution procedure "upon the agreement of the parties filed with the clerk, or judge, or entered in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties." Id. "[T]he Supreme Court has established a strong policy in favor of the enforcement of forum selection clauses." E. & J. Gallo Winery v. Andina Licorices, S.A., 446 F.3d 984, 992 (9th Cir. 2006). District courts have adhered to this strong policy in enforcing judicial reference agreements. See, e.g., Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp., No. 2:10-cv-02991-JHN-JCGx, 2010 WL 5154136, at *4 (C.D. Cal. Aug. 12, 2010) (characterizing an agreement's judicial reference provision as a "forum selection clause" and therefore applying the Supreme Court's "strong policy in favor of enforcement of forum selection clauses"); Unicom Systs., Inc. v. Fed. Deposit Ins. Corp., No. 2:23-cv-02507-WLH-RAO, 2024 WL 2425543, at *2 (C.D. Cal. May 14, 2024).

## IV.  DISCUSSION

### A.  FuturHealth's Motion to Compel Arbitration

FuturHealth moves to compel arbitration pursuant to the Federal Arbitration Act (9 U.S.C. § 1, et seq., the "FAA") on the ground that the Technology License Agreement ("TLA") entered between plaintiff and FuturHealth contains a broad arbitration clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to" the TLA. FuturHealth Mot. at 2; dkt. 29-2 at 10. Plaintiff's claims—including those alleging misuse of "G-Plans Technology," as defined in the TLA—arise directly from or relate to the TLA and are therefore subject to arbitration. Id.

FuturHealth argues that the TLA constitutes a presumptively valid and binding agreement between plaintiff and FuturHealth under which "Plaintiff agreed to arbitrate '[a]ny controversy or claim arising out of or relating to' the TLA." See id. at 13-14. FuturHealth argues that the TLA is valid because it was not procured via fraud in the execution nor fraud in the inducement. Id. at 14-18. As to fraud in the execution, FuturHealth argues that "Plaintiff is a sophisticated, multi-million-dollar business, represented by counsel" whose principals—including Philip Goglia and Lisa Saridakis—signed a Consent Package explicitly authorizing defendant Mahoney to execute, on behalf of Plaintiff, the TLA and two other agreements. See id. at 16. FuturHealth argues that all members of plaintiff—including Goglia and Saridakis—"knew they were approving binding agreements that were identified in the Consent Package by name,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

acknowledged that the 'form, terms, and provisions of [the Agreements] are fair to and in the best interests of [Plaintiff] and its Members,' and had full opportunity to request and review them before signing." Id. at 16-17.

As to plaintiff's argument that the arbitration agreement the product of fraud in the inducement, FuturHealth first argues that "Plaintiff's fraud in the inducement claim relates to the formation of the TLA as a whole, and therefore must be decided by the arbitrator, not the Court." Id. at 18 (citing Hicks v. Alaska USA Fed. Credit Union, No. 8:17-CV-1900-JLSE, 2018 WL 4804362, at *2 (C.D. Cal. Feb. 26, 2018) ("[C]laims that the contract as a whole was obtained through fraud in the inducement are, in the absence of evidence of the parties' contrary intent, arbitrable under Prima Paint.")).

As to the merits, FuturHealth argues that "Plaintiff's inducement theory fails for lack of misrepresentation, intent to defraud or justifiable reliance." Id. at 19. FuturHealth argues that "there was no misrepresentation or concealment" because "[t]he Consent Package identified each agreement by name, explicitly prefaced that under the Agreements 'the Company will provide FuturHealth with access to certain services, technology and data currently utilized by the G-Plans Business as more fully described in the Transaction Documents,' and was signed by all of Plaintiff's principals." Id. As to intent, FuturHealth states that "FuturHealth did not make any false statements, know of any falsity, or act with an intent to deceive. The Agreements were inadvertently omitted by Plaintiff's own corporate counsel; there is no valid claim of intentional withholding by FuturHealth." Id. Finally, FuturHealth argues that "there is no justifiable reliance because … Plaintiff had a reasonable opportunity to review the Agreements, including the TLA and the arbitration provision therein, but chose not to." Id. Finally, "[e]ven if the elements of inducement could be met … Plaintiff ratified the agreement by knowingly accepting their benefits for nearly two years." Id. at 20.

FuturHealth argues that plaintiff's claims against it fall squarely within the broad terms of the TLA's arbitration clause and that plaintiff has the burden of establishing that its claims do not fall within the scope of the TLA's arbitration clause. Id. at 20-21 (citing cases). FuturHealth argues that "the TLA includes a broad arbitration clause requiring that '[a]ny controversy or claim arising out of or relating to this Agreement" be resolved in binding arbitration … [and] governs the precise subject matter at the heart of every claim Plaintiff has asserted against FuturHealth." Id. This is because, FuturHealth argues, the TLA includes a critical licensing provision that "defines 'G-Plans

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

Technology' and expressly grants FuturHealth the right to 'use, reproduce, copy, distribute, market, perform, display, modify, create derivative works of, and incorporate the Licensed Technology into FuturHealth products and services.'" Id. Thus, FuturHealth argues that "Plaintiff's first set of claims for aiding and abetting breach of fiduciary duty, breach of contract (in the alternative), conversion, violation of California Penal Code § 496, trade secret misappropriation, trademark and copyright infringement, unjust enrichment, unfair competition, and civil conspiracy—all hinge on whether FuturHealth wrongfully used, possessed, or benefited from G-Plans Technology and related data." Id. at 22. Likewise, FuturHealth argues that plaintiff's second category of claims attacking the validity of the TLA— fraud in the execution, fraud in the inducement, and declaratory relief—"fall within the scope of a broadly worded arbitration clause, as they "relate to" the contract and therefore must be resolved in arbitration." Id. at 23.

In opposition, plaintiff argues that FuturHealth's motion must be denied because the TLA is void due to fraud in the execution. Opp. at 13. First, plaintiff argues that in cases where contracting parties are in a fiduciary relationship, "the duty to read a contract is relaxed because the fiduciary is 'duty bound to act with the utmost good faith for the benefit of the other.'" Id. at 14 (citing Brown v. Wells Fargo Bank, N.A., 168 Cal. App. 4th 938, 959-60 (2008)). Here, plaintiff argues that because Levan and Mahoney were Goglia Nutrition's managers, they were "bound by the duties of loyalty and candor under both [Goglia Nutrition's Limited Liability Operating Agreement ("Operating Agreement")] and California law" and thus "Goglia and Saridakis were entitled to trust their fiduciary partners to disclose material terms" of the TLA and other agreements.

Plaintiff argues that the evidence establishes that the TLA is voided by fraud in the execution because "the TLA, [Inbound Data License Agreement], and [Services Agreement] were not attached to the Written Consent that Goglia and Saridakis signed on December 18, 2023, despite the Consent explicitly stating they were." Id. at 15. Plaintiff argues that because the Agreements in the Written Consent were not provided to Goglia and Saridakis, they had no duty to read them. Id. at 15. Second, plaintiff argues that Goglia and Saridakis were entitled to "reasonably rel[y] on their fiduciary co-managers' representations that the [A]greements were above board" and that "[t]he burden was on the conflicted fiduciaries to provide the documents—not on the innocent parties to chase down withheld agreements." Id. at 16. Plaintiff argues that the alleged clerical error by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

Goglia Nutrition's counsel Jacob Ouzts that resulted in the agreements not being included in the Written Consent package does not render the TLA valid because such evidence of a supposed clerical error comes in the form of a letter by Ouzts that constitutes inadmissible hearsay. Id. at 16. Moreover, plaintiff argues that "a clerical error cannot cure fraud in the execution." Id.

Plaintiff further argues that the TLA is void due to Mahoney and Levan's fraud—namely, their allegedly deliberate concealment of their involvement with FuturHealth. See id. Plaintiff argues that Mahoney intentionally arranged for Mahoney and Levan's involvement with FuturHealth to be concealed from Goglia and Saridakis during the signing of the Agreements, despite being advised by plaintiff's company counsel Ouzts that such disclosure of their conflicts of interest was necessary to comply with California corporations law regarding fiduciary duty. See id. at 17. This sequence of events, plaintiff argues, demonstrates "intentional concealment and [is] direct evidence of fraud in the execution." Id.

Plaintiff also argues that FuturHealth's claim that Levan and Mahoney "verbally disclosed" their ownership in FuturHealth to Goglia and Saridakis is without merit: "[FuturhHealth's] self-serving, litigation-crafted statement lacks any specificity—no date, no details of what was said, no description of how Goglia and Saridakis supposedly reacted to learning their business partners owned the counterparty." Id.

Plaintiff further argues that Goglia and Saridakis' supposed ratification of the Agreements cannot cure their invalidity. Id. at 19. First, plaintiff argues that "ratification requires full knowledge of the fraud and intentional acceptance of benefits with such knowledge," and that the record does not support that Goglia and Saridakis ratified the Agreements because "Goglia and Saridakis lacked full knowledge until mid-2024. Upon discovering the fraud, they immediately retained counsel and demanded litigation. The fact that the company continued to operate during the year-long governance deadlock created by defendants' obstruction cannot constitute ratification." Id. Second, plaintiff argues that where fraud in the execution is established, as here, ratification cannot cure the fundamental invalidity of the contract. Id. (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 415 (1996)).

In reply, FuturHealth argues that plaintiff "does not dispute that the arbitration clause in the TLA was signed by authorized representatives," that "the arbitration clause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

broadly covers '[a]ny controversy or claim arising out of or relating to this Agreement,'" and "that, if its allegations amount to fraud in the inducement rather than fraud in the execution … the FAA requires those claims be arbitrated." FuturHealth Reply at 2. FuturHealth further argues that there was no fraud in the execution because Mahoney and Levan's "replacing their personal contact information with [FuturHealth's] company's official address[] and signing in the name of [FuturHealth]" on the Consent Package "are standard corporate housekeeping." Id. at 6. FuturHealth further argues that it is not plaintiff's fiduciary because Mahoney's and Levan's alleged conduct cannot be attributed to "corporate action by FuturHealth," and that "[e]ven if one assumed FuturHealth owed fiduciary duties … those duties do not permit blind execution in the face of irregularities," namely the missing Agreements from the Consent Package. See id. at 8.

The Court finds that there are serious questions as to whether the TLA and its arbitration provision are void due to Levan and Mahoney's alleged fraud in the execution. Although Goglia and Saridakis may not have received or read the Agreements (which includes the TLA), they received and signed the "Written Consent," which refers to the Agreements. See dkt. 17-5, Ex. 2; Kleveland v. Chi. Title Ins., 141 Cal. App. 4th 761, 765 (2006) ("[A] contract ... may include provisions that are not physically part of the basic document so long as those provisions are sufficiently incorporated by reference."). Thus, ordinarily, Goglia's and Saridakis' failure to obtain and read the Agreements referred to in the Written Consent defeats their fraud in the execution claim. See Desert Outdoor Advert. v. Superior Court, 196 Cal. App. 4th 866, 872 (2011). However, because Levan and Mahoney likely owed a fiduciary duty to Goglia and Saridakis as co-members of Goglia Nutrition, the parties' fiduciary relationship could have excused Goglia and Saridakis from reading the Agreements and instead allowed them to rely on Levan and Mahoney's alleged representations of the Agreements; thus, Levan and Mahoney's representations, if fraudulent, could constitute constructive fraud in the execution. See Brown, 168 Cal. App. 4th at 959; Marshall v. Ameriprise Fin. Servs., 735 F. Supp. 3d 1229, 1239 (E.D. Cal. 2024) (citation omitted).[1]

---

[1] At the hearing, counsel for FuturHealth argued that Brown and Marshall are factually distinct from this case and merit a conclusion opposite to the Court's conclusion. Counsel argues that in Brown and Marshall, the non-fiduciary parties to the arbitration agreements were particularly vulnerable to being taken advantage of by the fiduciary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

Because there are serious questions as to whether Goglia and Saridakis were "deceived as to the very nature of [the Agreements]" as a result of Levan and Mahoney's representations, Brown, 168 Cal. App. 4th at 958, the Court finds it appropriate to defer consideration on the issue of whether the TLA—which contains the arbitration provision—is void due to Levan and Mahoney's alleged fraud in the execution. See Rosenthal, 14 Cal. 4th at 415 (1996) (fraud in the execution voids the entire contract, including the arbitration provision). Accordingly, the Court defers consideration on FuturHealth's motion to compel arbitration.

Should subsequent evidence establish that the TLA was not void as a result of fraud in the execution, FuturHealth may renew its motion.

### B.  Levan and Mahoney's Motion to Compel Judicial Reference and Compel Arbitration

Levan and Mahoney argue that their motion to compel judicial reference should be granted because Levan and Mahoney, two of the four managing members of plaintiff Goglia Nutrition, entered into an Operating Agreement that requires all disputes arising out of or relating to the Operating Agreement to be resolved through California's judicial reference procedures.[2]  Levan Mahoney Mot. at 4.  Levan and Mahoney argue that

---

stockbroker parties.  Counsel contends that the scope of a fiduciary's obligation to explain the terms of a contract is fact-specific, and that here, where plaintiffs Goglia and Saridakis are sophisticated businesspeople and shared duties of care toward Goglia Nutrition, LLC, the fiduciary duty of Levan and Mahoney should not excuse Goglia and Saridakis's failures to read the arbitration provision.  The Court finds that FuturHealth's argument is misplaced.  FuturHealth's arguments address the serious question of whether the TLA and its arbitration provision are void due to Levan and Mahoney's alleged fraud in the execution.  However, until that question is answered, the Court cannot decide FuturHealth's motion to compel arbitration.

[2] The judicial reference provision in the Operating Agreement states: "DISPUTE RESOLUTION. EXCEPT AS OTHERWISE PROVIDED HEREIN, ANY CONTROVERSY, CLAIM, ACTION OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE HEARD BY A REFEREE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

"California public policy strongly favors the enforcement of judicial reference provisions" and that "[f]ederal courts regularly enforce agreements to resolve disputes through the procedures under C.C.P. § 638." Id. at 16-17. Here, Levan and Mahoney argue that plaintiff's claims against them fall squarely within the scope of the Operating Agreement's judicial reference provision because "[t]he Operating Agreement, and Member Defendants' obligations under the Operating Agreement, are central to each of G-Plans' claims against them." Id. at 18. Namely, they argue that "[t]he Operating Agreement requires that Member Defendants each 'discharge his duties as a Manager or Officer in accordance with good faith business judgment" and that "each of the Counts alleged against [Levan and Mahoney] is based on the claim that Member Defendants did the exact opposite of acting with good faith business judgment." Id. "Further, in connection with their creation and operation of FuturHealth as an alleged competing business, [Levan and Mahoney] are alleged to have breached the Operating Agreement's specific prohibition on operating a business in competition with G-Plans' Specific Business. And, by purportedly conveying G-Plans' intellectual property to FuturHealth … [Levan and Mahoney] are also alleged to have breached the Operating Agreement's requirement that such transfers of Company property be approved by the Management Committee." Thus, Levan and Mahoney argue that all of plaintiff's claims arise out of relate to the Operating Agreement and are subject to judicial reference.

In the alternative, Levan and Mahoney further argue that plaintiff should be equitably estopped from denying them the benefits of the TLA's arbitration clause even though they are not parties to it. They contend that "[e]quitable estoppel applies '(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, [or] (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'" Id. at 20 (quoting Murphy v. DirecTV, Inc., 724 F.3d 1218, 1229 (9th Cir. 2013)). Here, Levan and Mahoney argue that plaintiff's claims against them rely on and are intertwined with the TLA because "[Levan and Mahoney] are alleged to have wrongfully obtained G-Plans' agreement to enter into the TLA and to

---

PROCEDURE SECTIONS 638 THROUGH 645.1, INCLUSIVE…." Dkt. 304, Ex. A, at 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

then have used the TLA to first obtain G-Plans' trade secrets and intellectual property and then use those trade secrets and intellectual property to compete against G-Plans, in alleged breach of the TLA's limitations on FuturHealth's use of that technology. … In the absence of the TLA and [Levan and Mahoney's] alleged wrongdoing in connection with the TLA, most of the claims against [Levan and Mahoney] would not exist." Id. at 20-21.

Second, Levan and Mahoney argue that plaintiff's claims against them are based on alleged interdependent misconduct by them and FuturHealth, which is a signatory to the TLA and its arbitration provision: "Throughout the Complaint, … [Levan and Mahoney] are alleged to have worked in concert with FuturHealth to enable FuturHealth to use the TLA to obtain G-Plans' trade secrets and other intellectual property and then, in breach of the TLA, use those trade secrets and other intellectual property to compete against G-Plans and usurp its business opportunities." Id. at 21. They argue that "[t]he interdependent nature of the allegations of wrongdoing against Levan, Mahoney and FuturHealth is confirmed by the Complaint's Second Count, which alleges FuturHealth aided and abetted Levan's and Mahoney's breaches of fiduciary duty by serving as the vehicle for their wrongful transfer of G-Plans' trade secrets and intellectual property … [and] by the Complaint's Sixteenth Count for Civil Conspiracy, which alleges FuturHealth, Member Defendants formed an agreement to work together to misappropriate G-Plans' intellectual property and divert corporate opportunities to FuturHealth through the FuturHealth agreements, including the TLA." Id. at 21. Thus, Levan and Mahoney maintain that plaintiff's claims against them are "[1] founded upon and intertwined with the TLA and are [2] entirely interdependent with the wrongdoing allegedly committed by FuturHealth." Id.

Finally, like FuturHealth, Levan and Mahoney argue that plaintiff's alleged fraud in the execution claim does not preclude judicial reference or arbitration. First, they argue that the claim is meritless and therefore does not render the arbitration provision in the TLA unenforceable. Id. at 22-23. Second, they argue that because the fraud in the execution claim pertains only to the validity of the Agreements (including the TLA), it "does not attack the validity of the Operating Agreement (or its judicial reference provision)." Id. at 23.

In opposition, plaintiff argues that Levan and Mahoney's motion to compel judicial reference should be denied. Opp. at 20. Plaintiff argues that defendants err in arguing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

that courts must enforce judicial reference agreements; rather, plaintiff contends that under California Supreme Court's holding in Tarrant Bell Property, LLC v. Superior Court, 51 Cal. 4th 538 (2011), trial court have discretion not to enforce valid reference agreements under Section 638 of the California Code of Civil Procedure. Id. at 20.

Plaintiff argues that under Tarrant Bell, the Court should exercise its discretion to deny judicial reference because the present case "presents precisely the scenario that Tarrant Bell addressed: a multi-party dispute where not all parties can be compelled to a single private forum." Id. at 22. First, plaintiff argues that defendant FuturHealth is not subject to the Operating Agreement's reference clause and is bound only by the TLA's arbitration clause; thus, "[i]f Levan and Mahoney are sent to a referee while FuturHealth remains in [this Court], the result would be precisely what Tarrant Bell avoided: 'parallel proceedings' on overlapping issues." Id. Second, plaintiff argues that judicial reference is inappropriate because defendant Hambidge, whose "liability arises from the same operative facts … as the claims against his co-defendants [Levan and Mahoney]," is not subject to any arbitration clause or reference clause. Id. at 23. Thus, plaintiff argues that the risk of inconsistent judgments is great because "[a] referee might find that Levan and Mahoney disclosed their ownership interest while this Court finds they concealed it. A referee might conclude the transaction was fair while this Court finds it fraudulent. Such irreconcilable results would undermine confidence in both proceedings." Id.

Regarding Levan and Mahoney's equitable estoppel theory, plaintiff argues that it is meritless because it "applies only when (1) the plaintiff's claims are intimately founded in the contract containing the arbitration provision, and (2) the plaintiff seeks to impose the contract's duties on the non-signatory while evading the arbitration clause." Id. at 24. Here, however, plaintiff argues that it "is not suing [any defendant under] the TLA at all; indeed, Plaintiff maintains the TLA is void ab initio"; rather, plaintiff's claims "stem from Defendants' fiduciary duties as managers under the Operating Agreement, not from any obligation imposed by the TLA." Id. Second, plaintiff argues that "equity forbids Levan and Mahoney from taking advantage of their own wrongdoing. Cal. Civ. Code § 3517 ('No one can take advantage of their own wrong'). Levan and Mahoney are not innocent nonsignatories seeking the benefit of an arbitration clause—they are the very fiduciaries who orchestrated the fraud that rendered the TLA void." Id.

In reply, Levan and Mahoney argue that the concern of inconsistent results raised in Tarrant Bell is not applicable here because Tarrant Bell "involved 120 plaintiffs all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

alleging the same claims but only 100 of which were subject to a judicial reference procedure." Levan and Mahoney Reply at 1-2. In this case, Levan and Mahoney argue that "while there are some overlapping factual issues, the gravamen of [plaintiff's] claims against [] two sets of defendants [Levan and Mahoney; FuturHealth and Hambidge] are different such that the "use of the judicial reference procedure for the claims against [Levan and Mahoney] does not present the level of concern regarding inconsistent results that led to the decision not to enforce the judicial reference provisions at issue in Tarrant Bell." Id. at 3-4.

    In the alternative, Levan and Mahoney argue that the Court should, as a matter of equity, compel arbitration of plaintiff's claims against them under the TLA because "all of [plaintiff's] claims against [Levan and Mahoney], in addition to arising out of the Operating Agreement, also rely on and are intertwined with the TLA." Id. at 4.

    The Court declines to grant Levan and Mahoney's motion to compel judicial reference. Although some "[d]istrict courts have adhered to th[e] strong policy in enforcing judicial reference agreements," Performance Jet Skis LLC v. Bank of Am., N.A., No. 2:24-CV-02328-MRA-PVC, 2025 WL 1135282, at *2 (C.D. Cal. Mar. 14, 2025), the California Supreme Court's holding in Tarrant Bell instructs that certain circumstances warrant courts' exercise of their discretion to not enforce valid reference agreements. 51 Cal. 4th 538 at 542. In particular, the California Supreme Court suggested that declining to enforce reference agreements is particularly appropriate cases where "[o]rdering two groups of real parties in interest to try their cases in separate but parallel proceedings would not reduce the burdens on this court or the parties, result in any cost savings, streamline the proceedings, or achieve efficiencies of any kind." Id. at 541. This is the case here. Only Levan and Mahoney are subject to the judicial reference provision in the Original Agreement, whereas FuturHealth and Hambidge are not. However, all four defendants' liability arises from the same operative facts and requires resolution of many of the same legal issues such that granting judicial reference would result in "parallel proceedings" on overlapping issues and result in duplicative litigation and inconsistent rulings. Namely, "[t]he claims against all Defendants arise from a single fraudulent scheme: the secret creation of FuturHealth, the concealment of ownership interests, the manipulation of documents, and the transfer of technology through agreements procured by fraud. A referee might find that Levan and Mahoney disclosed their ownership interest while this Court finds they concealed it. A referee might

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:25-cv-08840-CAS-MAAx | Date | December 22, 2025 |
|---|---|---|---|
| Title | Goglia Nutrition, LLC v. John Levan et al. | | |

conclude the transaction was fair while this Court finds it fraudulent." Opp. at 23. Because the risk of inconsistent results would be significant, the Court declines to compel judicial reference with respect to plaintiff's claims against Levan and Mahoney.

Regarding Levan and Mahoney's motion to compel arbitration under a theory of equitable estoppel, the Court defers consideration on the issue because, as discussed above, the Court finds it appropriate to defer consideration on the issue of whether the TLA—which contains the arbitration provision—is void due to Levan and Mahoney's alleged fraud in the execution.

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** Levan and Mahoney's motion to compel judicial reference under the Operating Agreement.

The Court defers consideration on FuturHealth's motion to compel arbitration.

The Court defers consideration on Levan and Mahoney's motion to compel arbitration under a theory of equitable estoppel.

IT IS SO ORDERED.

|  | 00 : 26 |
|---|---|
| Initials of Preparer | CMJ |