KIMBERLY A. KLINSPORT, CA Bar No. 259018
  kklinsport@foley.com
NICHOLAS M. GROSS, CA Bar No. 285403
  ngross@foley.com
KELSEY FINN, CA Bar No. 334670
  kfinn@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: 213.972.4500
Facsimile: 213.486.0065

ANGELICA M. LOPEZ, CA Bar No. 360138
  angelica.lopez@foley.com
**FOLEY & LARDNER LLP**
55 Spear Street Tower, Suite 1900
San Francisco, CA 94105
Telephone: 415.434.4484
Facsimile: 415.434.4507

Attorneys for Defendant FuturHealth, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOGLIA NUTRITION, LLC,<br><br>                              Plaintiff,<br><br>          vs.<br><br>JOHN LEVAN; LUKE MAHONEY; JON HAMBIDGE; FUTURHEALTH, INC.; and DOES 1 through 100, inclusive,<br><br>                              Defendants.<br><br>FUTURHEALTH, INC.,<br><br>                              Counterclaimant,<br><br>          vs.<br><br>GOGLIA NUTRITION, LLC,<br><br>                              Counterclaim Defendant. | Case No.: 2:25-cv-08840-CAS-MAA<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S POST-HEARING BRIEF REGARDING PLAINTIFF'S CLAIM FOR FRAUD IN THE EXECUTION**<br><br>Date: May 19-21, 2016<br>Time: 10:00 a.m.<br>Dept.: 8D<br><br>Case Filed: September 17, 2025<br><br>Judge: Hon. Christina A. Snyder |

DEFENDANTS' REPLY TO PLAINTIFF'S POST-HEARING BRIEF
CASE NO. 2:25-CV-08840-CAS-MAA

## I.       **<u>INTRODUCTION</u>**

G-Plans did not satisfy its burden during the evidentiary hearing to prove by a preponderance of the evidence that the written consent ("Consent"), including the Technology License Agreement ("TLA") referenced therein, was procured by fraud in the execution—*i.e.*, that Goglia and Saridakis were deceived as to the basic character of what they were signing and had no reasonable opportunity to learn the truth. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 423, 425 (1996). Its post-hearing brief confirms it.

Instead, G-Plans' brief reads as though the evidentiary hearing never happened. It misstates the record by arguing "facts" while ignoring the sworn testimony that contradicts them. It misstates the law by asserting that deception as to the "character or essential terms" of a document means the signer must have understood every fact or consequence that, if disclosed, might have affected the decision to sign. That is not the law; it is an attempt to repackage fraud in the inducement as fraud-in-the-execution. G-Plans also asserts the mere existence of a fiduciary duty relieves a party of its obligation to read. That is not the law either. A fiduciary relationship excuses the failure to read only where the ***scope*** of the fiduciary relationship requires the defendant to ***explain*** the ***terms*** of the contract at issue.

The hearing established the opposite of what G-Plans had to prove. Goglia admitted he understood Mahoney had been negotiating a "$4M licensing deal." The Consent explicitly referred to a technology licensing agreement. Saridakis admitted no defendant told her anything at all about the deal. Both had more than two hours to read the Consent. Both chose to sign in less than two minutes. And no evidence demonstrated that FuturHealth, Mahoney, or Levan had any fiduciary duty to explain or read the terms of the Consent or TLA to either co-member-manager. Under *Rosenthal*, G-Plans' fraud-in-the-execution claim fails, and FuturHealth's motion to compel should be granted.

## II.      **<u>G-PLANS DID NOT CARRY ITS BURDEN UNDER *ROSENTHAL*</u>**

G-Plans bore the burden to prove both elements of fraud-in-the-execution: (1) deception as to the basic character of the document signed, and (2) no reasonable opportunity to learn the truth. *Rosenthal*, 14 Cal. 4th at 423. It proved neither.

**A.      No Deception As to the Basic Character of the Consent**

G-Plans failed to prove the first element of fraud-in-the-execution: that Levan, Mahoney, or FuturHealth deceived Goglia or Saridakis about the basic character or nature of the Consent. *See Rosenthal*, 14 Cal. 4th at 415, 425.

The hearing record established the opposite. Goglia testified Mahoney told him a "$4 million licensing deal for GP" was being negotiated, and he admitted he understood the transaction was "a licensing deal." (Day 2 Tr. 159:11–21, 163:22–23; Exhs. 175, 180.) The Consent expressly refers to a "Technology License Agreement." (Exh. 187.) Yet G-Plans ignores the match between Goglia's own understanding and the face of the document. There is no evidence Goglia was deceived about the basic nature of what he was signing.[1]

Saridakis's testimony independently defeats G-Plans' burden. She admitted **no one** explained the deal to her and that her information about the agreements came exclusively from her husband. (Day 2 Tr. 202:25–203:15, 205:1–20, 208:1–3.) If Levan, Mahoney, and FuturHealth said nothing to her, then G-Plans cannot show that any misrepresentation by them induced her execution of the Consent. G-Plans' brief *again* ignores this point.

Unable to show that Goglia or Saridakis were deceived about the nature of the Consent, G-Plans instead misstates the law. G-Plans treats the phrase "character or essential terms" as defined in the Restatement as though "essential terms" means any undisclosed fact that, had it been disclosed, might have affected the decision to sign. (Plf. Br. at 7–11 (citing Rest. (Second) of Contracts § 163).) That is not the law. If it were, nearly every inducement claim would become an execution claim, and the distinction recognized in *Rosenthal* would disappear. *See* 14 Cal. 4th at 419–21, 423–25.

But that is exactly what G-Plans attempts here. Its core theories are that Goglia and Saridakis were deceived because Levan and Mahoney allegedly concealed their ownership

---

[1] G-Plans' reliance on *Duick v. Toyota Motor Sales, U.S.A., Inc.*, 198 Cal. App. 4th 1316 (2011), only underscores why its theory fails. In *Duick*, the defendant's own form affirmatively mischaracterized the transaction as a "personality evaluation," and the court found even a reasonable reader would not have understood from the text that she was agreeing to become the target of a prank. *Id.* at 1321, 1323. Here, there is no such discrepancy. *Duick* addressed a document whose wording obscured its true character. This case involves signers who chose not to read a document that said precisely what it was.

of FuturHealth, failed to disclose conflicts, overstated the benefit to G-Plans, and hid the transaction's economic impact from them. (*See* Plf. Br. at 8-11.) Those are inducement theories—they go to **why** Goglia and Saridakis agreed to **the transaction**, not **what** they thought they were signing. *See Larian v. Larian*, 123 Cal. App. 4th 751, 765 (2004) (holding alleged execution claim was fraud in the inducement where plaintiff alleged he was induced to enter stock-sale agreements by misrepresenting business prospects and financial condition); *Rosenthal*, 14 Cal. 4th at 426 ("As to other terms of the agreement, such as the risks and benefits of the investments, the question of a breach of fiduciary obligations is a separate matter—in this case for the arbitrators—which we do not address"); *see also Jeppesen v. Cramer*, 2026 WL 1455350, at *5–6 (C.D. Cal. Apr. 17, 2026) (rejecting reliance on failure "to disclose conflicts and other purported breach of fiduciary obligations in investment strategy" as a basis for fraud-in-the-execution).

G-Plans' own theory thus confirms that this dispute concerns the wisdom and fairness of the transaction, not ignorance of the nature of the instrument signed.

## B. Neither Goglia Nor Saridakis Lacked a Reasonable Opportunity

G-Plans failed to prove fraud-in-the-execution's second element: that Goglia and Saridakis lacked a reasonable opportunity to learn the truth. *Rosenthal*, 14 Cal. 4th at 423.

Goglia received the DocuSign at 10:26 a.m., opened it at 10:33 a.m., and signed at 10:34 a.m. (Exh. 189; Day 2 Tr. 148:25–149:7.) He admitted: "I scrolled directly to the signing." (Day 2 Tr. 153:17–18.) He admitted that no one prevented him from reading it. (Day 2 Tr. 155:2–19.) Saridakis opened the DocuSign at 11:05 a.m. and signed at 11:07 a.m. (Exh. 189; Day 2 Tr. 182:7–12.) She too admitted she did not fully read its contents, and no one told her not to read it. (Day 2 Tr. 181:11–16, 198:8–14, 202:25–203:15, 208:1–3.) She asked no questions and requested no documents. (Day 2 Tr. 202:25–203:10.) Those admissions defeat G-Plans' execution claim.

G-Plans' new unpled theory is "manufactured urgency," but it offers <u>no evidence</u> that the timing was invented or that any asserted deadline actually prevented review. (*See* Plf. Br. 6, 14.) In fact, Saridakis's sense of urgency came directly from Goglia, who "rushed

into [her] office" and <u>urged her</u> to "sign, sign, sign." (Day 2 Tr. 181:11–16, 198:9–14.) She did not receive any direct communication from Mahoney or Levan identifying any deadline other than that the documents needed to be signed "ASAP" and "today." (Exh. 181.) Even accepting G-Plans' account at face value, Goglia and Saridakis had more than two hours before the asserted "1pm" deadline to review the just over one-page document and three exhibit pages. They signed in under two minutes because they voluntarily chose not to use the time available. No one instructed them to do otherwise.[2]

### C.    No Fiduciary Exception Excused the Failure to Read

G-Plans also failed to establish that Goglia and Saridakis were excused from reading the Consent and TLA.

As an initial matter, G-Plans' argument is based on another misstatement of law. G-Plans argues that an alleged breach of fiduciary duty is itself enough to establish fraud-in-the-execution because a fiduciary breach amounts to a "constructive fraud." (*See* Plf. Br. 8, 14.) Not so. In *Brown*, the Court of Appeal explained: "If the defendant is in a fiduciary relationship with the plaintiff ***which requires*** the defendant to ***explain the terms of a contract between them***, the plaintiff's failure to read the contract would be reasonable." 168 Cal. App. 4th at 959 (emphasis added).[3]

Here, G-Plans fails to identify ***any*** authority holding that co-managing members in this posture owe one another a duty to orally read a written consent and referenced agreements aloud, that any such duty arose because counsel "vetted" the document (though there was no representation by Levan or Mahoney of such "vetting"), or that Levan or Mahoney were required to ensure Goglia and Saridakis received executed copies post-signing. The G-Plans Operating Agreement imposes no such duty.[4]

---

[2] Moreover, Goglia, despite knowing for at least a month before signing that Mahoney was negotiating a "$4m licensing deal," that the deal would carve out Goglia's methodology, and that the documents were forthcoming—he never even asked to see a copy. (*See* Day 2 Tr. 126:23–127:7, 159:11–21, 160:23–161:5, 162:8–163:4; Exhs. 175, 177, 178, 179.)
[3] In fact, even after finding a fiduciary relationship, the court in *Brown* still had to resolve whether the scope of that duty required the fiduciary to "do more" to ensure the signer understood the agreement's terms. 168 Cal. App. 4th at 961.
[4] If anything, Goglia and Saridakis, as member-managers executing company action by written consent, were ***obligated to read*** the Consent before signing it. (Ex. 1, § 9.2.G.)

## III.   G-PLANS' BRIEF BLATANTLY MISSTATES THE RECORD[5]

G-Plans' failure to carry its burden is compounded by its reckless, and overtly misleading presentation of the "evidence." For example, G-Plans argues that "Levan and Mahoney drafted the consent, withheld the terms, and wrote a finding of fairness into their partners' mouths." (Plf. Br. 12.) That is flatly wrong. G-Plans' own counsel, Ouzts, with the assistance of his paralegal, Weston, drafted it. (Day 1 Tr. 135:11–23.) Weston transmitted it. (Day 3 Tr. 9:14–10:1.) No contrary evidence or testimony exists.

G-Plans also repeatedly argues that the "blank exhibits" prevented assent because "no one assents to terms one is never shown." (Plf. Br. 1, 6, 12, 15.) But both Goglia and Saridakis admitted they never read the contents of the Consent. Goglia: "I scrolled directly to the signing." (Day 2 Tr. 153:15–18.) Saridakis: "No. I was in a hurry." (Day 2 Tr. 207:2–12.) The "blank exhibits" made no difference—neither even looked.

Finally, G-Plans asserts that Levan and Mahoney were "bound" to provide written disclosure of their interests in FuturHealth. (Plf. Br. 12.) But Ouzts testified he understood disclosure had already occurred orally and recommended putting it in writing "because . . . that would be the prudent thing to do." (Day 1 Tr. at 181:23–182:9.) G-Plans ignores this testimony and provides no evidence of any written requirement. Indeed, there is none.

The Court heard the testimony omitted from G-Plans' brief. It should not credit a post-hearing brief that proceeds as though the hearing did not even occur.

## IV.   CONCLUSION

G-Plans failed to prove by a preponderance of the evidence that the Consent or TLA is void for fraud-in-the-execution. The Court should therefore reject G-Plans' fraud-in-the-execution claim, grant FuturHealth's motion to compel arbitration, and, because the only basis for deferring the issue has now been resolved, also compel arbitration of the claims against Levan and Mahoney under the equitable estoppel doctrine.

---

[5] The space limitations prevent the defendants from addressing each of G-Plans' myriad other misrepresentations of the record, and they reserve the right to address them in a motion for sanctions.

Date: June 19, 2026

**FOLEY & LARDNER LLP**
KIMBERLY A. KLINSPORT
NICHOLAS M. GROSS
KELSEY FINN
ANGELICA M. LOPEZ

By: */s/ Kimberly A. Klinsport*
Kimberly A. Klinsport
Attorneys for Defendant FuturHealth, Inc.

Date: June 19, 2026

**BERGESON LLP**
DANIEL BERGESON
JOHN D. PERNICK
PETER SOSKIN

By: */s/ John D. Pernick*
John D. Pernick
Attorneys for Defendants John Levan and Luke Mahoney

### Signature Certification

Pursuant to Local Rule 5-4.3.4, the filer of this document attests that all of the signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Kimberly A. Klinsport*
Kimberly A. Klinsport

DEFENDANTS' REPLY TO PLAINTIFF'S POST-HEARING BRIEF
CASE NO. 2:25-CV-08840-CAS-MAA